b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION 1:10-CR-00119-01** |
| **VERSUS** | **JUDGE DRELL** |
| **DIANTE ROMAN DIXON** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Diante Roman Dixon ("Dixon") filed a second Motion to Reduce Sentence (Dc. 57). Because Dixon's first reduced sentence was properly calculated, Dixon's Motion (Doc. 57) should be DENIED.

I. Background

Dixon pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of cocaine base[1] in the United States District Court for the Western District of Louisiana. (Doc. 9). Dixon was initially sentenced to 270 months of imprisonment as a career offender.[2] (Doc. 21). Dixon filed a Motion to Reduce Sentence pursuant to the Fair Sentencing Act of 2010 ("FSA"), PL 111-220, (8/3/2010), 124 Stat. 2372. (Doc. 34). That motion was granted under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and (retroactive) Amendment 782 (Doc. 48). Dixon's sentence was reduced to 130

---

[1] The actual amount of cocaine base was 148.9 grams. (Doc. 49, p. 5).

[2] According to the presentence report (Doc. 49), Dixon's subtotal offense level, prior to his career offender enhancement, was 32. After Dixon's offense level was enhanced to 37 for career offender status, 3 points were subtracted for acceptance of responsibility, for a total offense level of 34.

months. (Doc. 48). Dixon argues his 130-month sentence is 10 months in excess of his maximum possible sentence.

Dixon filed a second Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 (Doc. 57). In his second motion, Dixon contends the District Judge failed to consider the new sentencing guideline range imposed by Amendment 782 when he resentenced him.

Dixon contends the Court correctly determined his sentence should not have been enhanced pursuant the career offender provision and voided the career offender enhancement. Dixon's offense level was adjusted to where it was before the enhancement. Dixon argues, however, that the Court failed to subtract 2 points from the new offense level as required by Amendment 782. In other words, Dixon argues he was erroneously sentenced pursuant to his unenhanced offense level of 25, instead of the "minus 2" offense level of 23, pursuant to Amendment 782.

Dixon further contends that an offense level of 23 provides a sentencing range of 92 to 115 months, but acknowledges he has a mandatory minimum term of 120 months under 21 U.S.C. § 841(b)(1)(B).[3] Dixon argues his sentence should be reduced to 120 months.

## II. Law and Analysis

A district court may reduce a sentence when it is for "a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

---

[3] Dixon had one prior final felony drug offense conviction that increased his minimum sentence to 120 months.

Commission...." 18 U.S.C. § 3582(c)(2).  See United States v. Hernandez, 647 Fed. Appx. 426, 427 (5th Cir. 2016).

The FSA became effective on August 3, 2010, lowering the penalties for crack cocaine offenses.[4]  See United States v. Jones, 2015 WL 3604690, at *2 (W.D. La. 2015).  Amendment 782 to the United States Sentencing Guidelines (effective November 1, 2014) reduced by two levels the Base Offense Level assigned a defendant by the Guidelines' Drug Quantity Table in Section 2D1.1.  See Hernandez, 647 Fed. Appx. at 427 (citing U.S.S.G. App. C., Amend. 782; U.S.S.G. App. C., Amend. 788 (making Amendment 782 retroactive)).

Pursuant to his first motion (Doc. 45), Dixon's sentence was recalculated, and he was resentenced on September 29, 2015. (Doc. 48).  In that recalculation, the pretrial services report stated his sentence was recalculated "[p]ursuant to the Guidelines Manual effective November 1, 2014 and including Retroactive Application of Amendment 782 effective November 1, 2014."  The 2014 Guidelines Manual incorporated the changes made by Amendment 782.[5]  For Dixon, Amendment 782 lowered his offense level from 30 to 28.  See U.S.S.G. § 2D1.1(c)(7).

On resentencing without career offender status, Dixon's total offense level of 25 (including a 3-point reduction for acceptance of responsibility) placed him within a guideline range of 110-137 months.  See U.S.S.G. Sentencing Table, Ch. 5, Pt. A, 18

---

[4] The United States Sentencing Commission then issued Amendment 750, amending the United States Sentencing Guidelines and lowering the offense levels for crack cocaine offenses.  See Jones, 2015 WL 3604690, at *2.

[5] Amendment 782 is set forth in the Supplement to Appendix C at p. 64 of the Guidelines Manual effective 11/1/2014.

3

U.S.C. Pursuant to 21 U.S.C. § 841(b)(1)(C), Dixon's statutory mandatory minimum sentence was 120 months. The District Judge sentenced Dixon to 130 months.

Dixon argues his proper total offense level was 23, with a sentencing range of 92 to 115 months. Dixon is apparently basing his calculation on the amount of cocaine base found in his home–148.9 grams. The amount of cocaine base alone gave him an offense level of 26 that, with a 3-point reduction for acceptance of responsibility, would give him a total offense level of 23.

However, Dixon's offense level was calculated from a combination of all of the drugs found in his home–cocaine base, powder cocaine, and hydrocodone syrup–which had a combined converted[6] weight of 765.47 kg. of marijuana for an offense level of 28. Section 1B1.3 provides that when the offense level is determined by the "quantity of [the] substance involved" in the offense, such as by the amount of drugs one is accused of trafficking, the probation officer and court may use uncharged conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction" to calculate the appropriate offense level. See United States v. Rhine, 637 F.3d 525, 532 (5th Cir. 2011), cert. den., 565 U.S. 1116 (2012) (citing U.S.S.G. §§ 1B1.3(a), 3D1.2(d); U.S.S.G. § 2D1.1). Therefore, although Dixon pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of cocaine base, his offense level was based on a combination of all of the drugs found (Doc. 49).

At his plea hearing, the Court asked Dixon if he understood he was charged with conspiring to possess with intent to distribute 50 grams or more of cocaine base

---

[6] See U.S.S.G. § 2D1.1, Application Note 8(D), Drug Equivalency Tables.

(crack cocaine). (Tr. p. 5). The Court explained "the overall scope of the conspiracy involved at least 50 grams of crack cocaine." (Tr. p. 16). "You know that the offense charged here is more than 50 grams of a mixture or substance containing cocaine base or crack cocaine. In drug cases, you understand that your offense level and guideline calculations can be affected by the amount of – amount or quantity of drugs involved?" (Tr. p. 17).

Detective Juan Cruz testified that he found crack cocaine, powder cocaine, and hydrocodone syrup in the house occupied by Dixon and Monica Fairley. (Tr. pp. 6-27). Although Fairley attempted to take responsibility for the drugs in the house, she was unable to describe either the drugs or their packaging to the officers. (Tr. p. 27). Detective Cruz testified the crack cocaine weighed 148.9 net grams (Tr. p. 28), and the powder cocaine weighed 54.5 net grams (Tr. p. 28). There was no testimony as to the amount of hydrocodone syrup found.

The pretrial services report of August 9, 2010 states that "one glass bottle containing approximately 818.1 gross grams of purported Tussionex (codeine) syrup" was seized from the residence. The report further states that the DEA South Central Laboratory determined the "Tussionex syrup" had the active ingredient Hydrocodone with a net weight of 445.7 grams.

At the sentencing hearing, the Court found the factual statements contained in the presentence report were "in harmony with the evidence and information presented" and adopted those factual statements as the Court's findings of fact. (Tr.

5

p. 11). Thus, Dixon's offense level of 28 was based on the total amount of drugs found in his home. See U.S.S.G. § 2D1.1(c)(6).

The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range. See United States v. Martinez, 231 Fed. Appx. 307, 308 (5th Cir. 2007) (citing United States v. Mares, 402 F.3d 511, 519 (5th Cir.), cert. den., 546 U.S. 828 (2005)); see also United States v. Watts, 519 U.S. 148, 156 (1997) (citing McMillan v. Pennsylvania, 477 U.S. 79, 91-92 (1986)). The presentence report in this case provides explicit rationale for the drug quantity determination. Therefore, by adopting the factual statements in the presentence report, the District Judge determined that the powder cocaine and hydrocodone found with the cocaine base were "relevant conduct" that supported the drug quantity calculation and the offense level of 28. See Martinez, 231 Fed. Appx. at 308 (citing United States v. Carreon, 11 F.3d 1225, 1231 (5th Cir. 1994)).

Accordingly, Dixon's offense level was calculated to be 28 by using a combined drug quantity from the cocaine base, powder cocaine, and hydrocodone. Dixon's resulting total offense level was 25, with a sentencing guideline range (which was properly considered by the Court) of 110 to 137 months. Dixon's 130-month sentence falls squarely within that range.

Therefore, Dixon's Motion to Reduce Sentence (Doc. 57) should be denied.

### III. Conclusion

Because Dixon's new sentence was correctly calculated, Dixon's § 3582 Motion to Reduce Sentence (Doc. 57) should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __26th__ day of April, 2019.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge